May it please the court, I'm Robert Muse. It's my honor and privilege to represent the plaintiff appellant Wayne Brown in this important case involving the First Amendment rights of government employees. I'd like to reserve three minutes of my time for rebuttal. I will do my level best to do so. Here we have a well-known anti-police activist who was able to change the life of a young police officer by complaining about the viewpoint of certain posts appearing on the officer's Facebook page. Posts that the officer made several years prior to when he was even hired by the Tulsa Police Department. The city in their press release bragged that within one hour and 15 minutes of receiving the complaint from the activist, the city through its chief of police fired Officer Brown. This is not a hard case. It shouldn't be. Controlling law compels the reversal of the district court's patently wrong decision. The firing of Officer Brown violated his constitutionally protected interest in freedom of expression. It's well established in a line of Supreme Court cases and cases from this court that a state may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech. In here, plaintiff's speech, which was his social media posts, was made as a private citizen commenting on matters of public concern. Should we think about the chronology here? How should we be thinking about the chronology here? The speech predates his employment by several years, but it was, uh, it stayed up after he was employed by the police department and he changed his profile picture, right? So did did he continue speaking that whole time? Or, you know, should we be thinking about it as there's a period of time that is speech that predates and then time that postdates his employment? Yeah, that's the timing of this is to me is is is critical. It's very important as the courts have said and and Flynn again repeated it. You look when you're balancing, you look at the content, context, manner, time and place of the police's expression. So when you put that into that context, he was when he made this speech and granted it, I think most people understand how social media works. I mean, to be able to find a post that is six years old, you have to do some actual digging in his in his Facebook page. The other thing, if you look at the latest post, it was three to six years prior to him being hired were the posts that were objectionable. So that means from the three years prior to when he was hired, there was no objectionable speech. And the problem if he wanted an opportunity, you saw on the record, he wanted opportunity to talk to the chief of police, even an opportunity to take down those posts. If that was the case, nothing. An hour and 15 minutes, they fired him. Did the policy contemplate, uh, or can the policy be fairly read as a takedown policy? As a takedown policy? That that can be problematic. You know, I tend to be a free speech purist. I know in the in the government employee context, there are situations where the speech can disrupt the operations of the government. And this really goes to the point of this of this case. And this is I know when you're dealing with the balancing test is how to draw a line, you know, where a line should be drawn. But there is a legal line drawn here. It was emphasized in Flanagan. They cited it in the that Fourth Circuit case and footnote eight in Flanagan. The public reaction to speech is not a legitimate basis for restricting that speech. Even in the employment context, there has to be some disruption in the internal operations, right? That's a council. Doesn't that get back to Judge Rossman's questions of chronology? Because if we were to determine this was essentially continuous expression so that at every moment that that post is still on the Facebook account, and I'm not a Facebook user, but you said, well, it takes a lot of effort to find it. I don't know if that's true. That wasn't sort of part of the record of this case. But if we were to find that by leaving it on his Facebook account, that that's essentially continuous expression so that the day this person from the community found it, wouldn't that then negate their responsibility under the test to show actual disruption and rather they could just show that they were intended to avoid disruption? That changes the analysis, right? It doesn't, not at all, because the disruption has to be to the internal operations, not to the public's response to it. That was the only, in fact, the only internal disruption here with the record evidence was the firing of him. The Captain Bell, who was the one that was given the duty of going down and firing him, if you recall from in the he told Officer Brown that he thought this firing was BS, right? Because they knew that their leadership was throwing the officers under the bus because this well-known political activist was trolling their Facebook pages to try to get rid of them. Think about the policy implications of this for government employees. If you can be held accountable for some post that you made six years prior to being employed and you can be fired on that basis, during that six years of period, something that might have been offensive today might not have been offensive six years ago, and yet they're holding to this standard. There is a, this is a fundamental right to freedom of speech that we're dealing with, and the court has said time and again you cannot condition public employment on that. And if it all depends on what the public reaction is, that if you have an activist who happens to have a well-mobilized, incentivized, organized affront to this police officer, then that is what is the balance of determining whether it's a first man, right? The speech itself, I mean one of the images, as I understand the record, that was the basis of termination involved a post that had the Confederate flag. So if Officer Brown, when he was Officer Brown, could he just hoist a Confederate flag outside his home and not be subject to recourse because that's protected speech? Do I think so? Absolutely. I think there's absolutely, I mean this is the problem with viewpoint discrimination, and that's what this is, it's viewpoint an offensive symbol. There's plenty of people who view it historically. I was in the Marines for 13 years. I studied the Civil War. I tend to view it as a historical, as a historical matter. It was a picture, that image had President Trump, then candidate Trump in a police uniform riding the line with the Confederate flag in the background. I mean how is it not just their offense, well President Trump is a white supremacist supporter, right? That's what all the, so now we can fire him because of that? This is a problem with viewpoint discrimination, and the Supreme Court has said in the Mattel v. Tam case, offense is viewpoint, and you can't, unless there's some effect on the internal operations, such as, you know, you criticize your fellow officer, or you criticize the chain of command, or you do something that disrupts the internal operations and chain of command, I could see that as being problematic. You may be a free speech absolutist, but that's not the test we have to employ, because as I, you know, pickering test, and the third factor is a balance, and so without us sort of invading into the viewpoints of Mr. Brown, or as the city views them, we're looking at the interest again in this balancing test, and it's not absolute. So under my scenario, where I'm saying your position is a police officer in Tulsa could hoist a Confederate flag and not be subject to recourse, because some people view that historical. Well, a lot of other people don't. Why couldn't the city, in employing the pickering test in the factor three, say we believe, even if it hasn't yet caused such active disruption within the force, but we're trying to get ahead to avoid disruption, why wouldn't that, in that scenario, the balance lead towards the city's determination? And again, this balancing test isn't simply a pushover. There's a substantial burden on the government under this balancing test for very good reasons, and again, going back to the main point, and the main point of what Flanagan, and even that, again, the Fourth Circuit case, which is cited very favorably and dealt with racial issues and protests outside of the building, the court said again, the public reaction to this speech is not a legitimate basis, regardless of the balance. Is it even possible to do the balancing at this stage? Is it possible to? Yes. Is it possible to do the balancing at the third step, at the motion to dismiss stage? In this case, not abstractly. Well, when you apply Flanagan, the balance, there is no balance, because their whole basis for disruption was a public response to the speech, and under Flanagan, that's not a legitimate basis. What about fields? Remember, Judge, this was an hour and 15 minutes after receiving. Right. What about fields? In fields, we recognize that the Tulsa Police Department must maintain public confidence that, quote, police protection will be available to the public and that the police will deal with all impartially. I'm very familiar with fields, Your Honor. It was my case. Well, then I don't need to read this to you. No, you don't. You can tell me all about it. I can. I can tell you all about it. It was mainly a free exercise case. The free speech component came in on the filing of the lawsuit as a retaliation. What really was the main issue there was that it undermined, because he was challenging an internal order of the police department from a senior to a junior officer, that that is where the disruption was going to be called into play. But it seems that the interest there is different. For purposes of the third step, the interest recognized in fields seems slightly different than the one at issue in Flanagan. Is it not? Well, it's only because, again, it's in the internal operations. Flanagan is very, very clear, very specific. You don't think that fields is about the interest in maintaining public confidence and what people outside the department think of an officer's ability to treat the public impartially? If that's based on the reaction of the of the public to the speech, it's not a legitimate basis. And fields did not address that in the way that Flanagan addressed it. Again, fields was very scant on the on the First Amendment component. It was mainly a free exercise and establishment clause case. It was a retaliation that came in. If I understand your position just on the law, and I'm thinking about the clear, you know, think about this through the lens of the clearly established prong for qualified immunity. Is the case that establishes the law clearly here Flanagan? Absolutely. And is there any reason that we shouldn't think that in light of fields? Not at all. Absolutely not at all. And again, the factual scenario between the two was are considerably different. Again, one was dealing with the internal operations of the police department. This was an anti-police activist who mobilized his forces to create a public controversy about these about these posts. And again, bear in mind, the city bragged to the fact that after an hour and 15 minutes, really, there was there was that much of an internal disruption and not at all. It was not the only until I said the only internal disruption was that the police officers now the rank and file think that the senior leadership is going to throw them under the bus as soon as somebody, you know, complains about their speech that they may have made six years ago, six years ago. Counsel, you started by saying this is an easy case. And then Judge Rossman asked you, can we even do the Pickering balancing at this point when it was a 12 v 6 dismissal? I thought that's when you were going to say, well, that's what makes this an easy case. So I'm going to give you that opportunity. Every 12 v 6 makes it an easier case. This is an easy case because the fact that they fired him based on the public's reaction to his speech as a matter of Flanagan, sorry, end of story. We win this certainly at 12 v 6. Quite frankly, this thing's going to as soon as we get back here and trust this court's going to reverse and send it back down, there'll be a summary judgment motion that'll be coming right afterwards. Because this is so plainly a violation of the Constitution that it's again, an hour and 15 minutes speech he made six years prior to wasn't even aware that the police department was concerned about this. He was he went to the police academy, you know, been through this, he was started, he was hired in January of 2019, went to the police academy, all the investigations backgrounds, he was on the ground, if his conduct, and that's one of the things I think is important, if his conduct somehow demonstrated or caused some disruption, that's a different issue. We're talking about pure speech. And I have two minutes and 52 minutes left that I'd like to reserve if at all possible. You got it. Go ahead. Thank you.  Hey, police court. Lawson Vaughn with the city of Tulsa on behalf of the city of Tulsa and retired chief Jordan. I'll jump in with I think that you're right on with the timing. I think he this was a post that was continuously posted. He had the opportunity once he became a police officer, knew about knew about the policy. He could have taken the post down, it could have made him private. Is the policy a takedown policy? Should we understand it that way? I don't believe so. I believe so. So why did he have an obligation to remove speech that he made before years before he was employed by the police department? Because of the, as you've mentioned, the public employer has an interest in the public's confidence and in the efficient operation of its enterprise. And if officers are allowed to make posts that are discriminatory and express bias against segments of our community on the basis of their religion, religious beliefs, or on their race, that tremendously hurts the city's ability to do that. What if, what if these posts had been taken down, but before they were somebody screenshotted them and then brought them down and gave them to the chief and said, look at this, what a rotten guy you've hired. He's terrible. He's violating all your policies. We want him gone. And these posts were taken down, they were three to six years old before he was ever hired. They were down before he was hired. I think that would be a different scenario. I think that we would not have the actual disruption that we have. We also would not have the potential for more internal disruption that we've mentioned in a brief. Well, how should we be considering the sort of, the type of potential disruptions and the type of interests that you articulate in your briefing at the 12B6 stage? I mean, this concerns, I mean, my question concerns how we're supposed to do the third step of Garcetti Pickering on a motion to dismiss. And if we take all of the allegations here in the complaint, we can't look at your arguments about your interests at this stage, right? Well, it would just be the inferences that you can draw. I think it's easy to see how there would be internal disruption by one officer expressing bias against those that practice Islam, against those based on their race. Isn't what you just said inherently a fact-based determination? I mean, I read Flanagan to say here are the considerations that the court must undergo in doing this Pickering balancing. And this question about at the 12B6 stage, where whatever they said in the complaint that's well pleaded, we have to accept as true. Wasn't it error for the district judge to go forward on a balancing and make all these factual determinations at the motion to dismiss stage? Or why wasn't that error? I don't believe so, because I think those facts were in the amended complaint. I think that he relied on those facts. He took those as true. And based on those facts, he found that it was not sufficient to support a claim. I think that it's easy to see how there would be a disruption where you have in the case law has said there's to be great deference given when it involves law enforcement, when it involves a police department where there's a great deal of loyalty and confidence between the officers needed in order for an efficient operation. And if your backing officer has voiced that he doesn't like you, he doesn't like your race, your religious beliefs, now you've got questions about, you know, can I be confident this person is going to back me? So you're at the balancing test. And again, I'm just looking at only the complaint here. And for example, you said a moment ago, well, when he was hired as police officer, he could have made his Facebook account settings private. Well, the complaint doesn't say anything as to whether or not his Facebook was set to public or private. And even so, the timing aspect comes into play about when those settings could be changed. Again, isn't all that fact-based determination that a court would have to make at the district court level to delve into the mechanics of Facebook and who could have seen what when, and then to balance that against either disruptions or the potential to avoid disruptions? Well, I think the fact that there was, and it was alleged in the complaint, the fact that there was, I mean, there were 300 shares of this post that was the copy of the images that Officer Brown shared. There were media inquiries. There was, I think, actual disruption. But all that came about because somebody else republished them. So how can, you know, saying, well, the media was interested in this. I mean, wasn't that a result of him being fired and then that being put out into the public domain? It's not because he posted that six years prior, right? The post didn't say anything about him being fired. The post just had, hey, this Tulsa police officer posted this. You know, isn't this outrageous? And, yeah, it was. And the city doesn't have to wait for, wait to see what unfolds. It can act, and that's why it did, within an hour and 15 minutes to prevent more internal disruption that it could see. So it sounds like you're agreeing that the disruption is internal and that you don't rely on an external disruption. There's both, and I think the district court found both. There was actual disruption, and there was also potential for- I'm not suggesting that there wasn't, but as a legal matter, which one matters here? Whether there was an internal disruption or an external disruption that you were trying to  Well, the case law talks about both. The efficient operation of the enterprise is what- There's some tension in our case law, isn't there? There's a little bit of tension. Would you agree that Flanagan's controlling? I do not. I believe that this case is easily distinguishable from Flanagan. I think the court in Flanagan found that any disruption related to the speech itself was too attenuated, and I can see that in that case. In that case, you've got officers that have an off-duty business where they are- you know, just have part of their business is that they are selling and renting videos that have sexually explicit material in them. It's something that, you know, maybe somebody finds out that officers own this video store. Maybe somebody is offended by those, and maybe it was just- it was so- you know, maybe it causes them to lose respect for the police department and not cooperate with the police department. It was very attenuated. Here we have- here's some offensive posts directly linked to Tulsa Police Department officer. You don't have to stretch so far to find the disruption caused by the speech itself in this case. If you have anything else, you're free to finish, but I'm not hearing any more questions. I have another question if I may. If we were to remand on the First Amendment claims, would there be any reason why we shouldn't do the same on the qualified immunity analysis regarding Chief Jordan? I think that Chief Jordan is still- would certainly be entitled to qualified immunity. I don't believe it is on point. I don't believe it would have informed Chief Jordan that what he was doing was going to be a violation of Officer Brown's constitutional rights. So what would the clearly established law be here? Are you relying on fields? Are you saying the law is not clearly established? What's your position on assuming a constitutional violation, a First Amendment violation? I think fields is very clear on the superior interests of the public employer in the public's confidence and in its efficient operation. And when that's impaired, the public employer does have the right to limit that speech. And I would just mention with a little bit more time that I have on the equal protection claim, I think that that was properly dismissed by the Equal Protection Claim is where you have a government treating one group of citizens different from another group. We don't have that here. That's not been alleged here. It's not like there's anybody that, you know, all TPD officers had a right to use Facebook. None of the TPD officers had a right to express bias on the basis of race, religious beliefs. It'd be one thing if there was, you know, some groups that were allowed to do that and some were, you know, accepted. But no, we're not going to let somebody express these views. It's not a viewpoint issue. It's a matter of public confidence. It's a matter of expressing bias towards any religion, any race. Thank you, counsel. Thank you. Looks like you've got 249. No, it's going to be 249. Okay, three seconds. I'll give them up. Your Honor, regarding the qualified immunity, Flanagan is on point, right? It's a clearly established law of which a reasonable person would have known. This is a direct quote from Flanagan. The employer, quote, cannot justify disciplinary action against the employee simply because some members of the public find the speech offensive. That is a long-standing principle law. It's ingrained in Flanagan. It absolutely defeats qualified immunity. And again, I won't read the footnote, but look at footnote eight in Flanagan where the court cites with favor the Fourth Circuit case where there was all this external disruption made that very point. It's called the heckless veto. The First Amendment knows no heckless veto. That is a long-standing principle of law even in the employment context. So I doubt you're going to concede that there's any tension in our case law. Oh, there's none. There's absolutely none. And there shouldn't be. Think about the policy justifications. Think about if you rule on behalf of the Tulsa Police Department, how this incentivizes all these people with these agendas, this happens to be an anti-police agenda, to mobilize their social media forces to go after an individual in government and get them kicked out because the public is responding to his speech. The U.S. Supreme Court has said time and time and time again, speech on public issues must be uninhibited, robust, and wide open. We have a First Amendment for a reason. It's what distinguishes us from all these other countries. And it's being eroded. So on the clearly established prong of the qualified immunity question, you wouldn't look at it and say that the chief could look at Flanagan and Fields, for example, and say, gosh, you know, after looking at these, I'm confused. There should be no confusion. No confusion. Fields was not as much an employee speech case as Flanagan was. Flanagan was on that point. Well, even if he could be confused, he can't be confused yet, right? We're at the motion to dismiss stage. And so isn't our understanding of what the clearly established law is that we're on the hunt for derived from how the Constitutional violation is formulated? Right. And the Supreme Court has said time and time again, I think it was the Hope case, that it doesn't have to be, it can even be in novel circumstances, have to be exactly on point. What is the established law? The established law is you can't justify the firing of a government employee based on the public reaction to speech. That was clearly established at the time that Mr. Brown was fired. And that supports the, the allegations in your complaint are Flanagan driven, right? Flanagan driven, as well as, I mean, a host of other First Amendment cases dealing with the, with the free speech. Real fast and equal protection, I got 18 seconds. It's not a class of one case. It's not a disparate treatment case. They totally misapprehended. This is Chicago, the Police Department versus, Police Department of the City of Chicago versus Mosley. The Supreme Court has said under equal protection, not to mention the First Amendment itself, when the government grants a form to individuals for speech, it can't prohibit speech because they dislike the viewpoint expressed. This is plainly viewpoint discrimination in a form. It's social media. He even admitted, the government admits that the social media is a form that's open to all the officers. When you start engaging in viewpoint discrimination in that form, not only is it a violation, it's an equal protection violation. Thank you, Counselor. You're out of time. The case will be submitted and Counselor excused. Thanks both of you for your arguments.